# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| EDWIN M. BARKER, JR., | ) |
| Plaintiff, | ) |
| v. | ) No. 4:10-0446-DGK-SSA |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) |
| Defendant. | ) |

## ORDER AFFIRMING COMMISSIONER'S DECISION

Plaintiff Edwin M. Barker seeks judicial review of the Commissioner of Social Security's denial of his application for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. § 423, and his application for supplemental security income ("SSI") benefits based on disability under Title XVI of the Act, 42 U.S.C. §§ 1381a-1383. Plaintiff has exhausted all of his administrative remedies and judicial review is now appropriate under 42 U.S.C. §§ 405(g) and 1383(c)(3).

After careful review of the record, the Court holds the administrative law judge's decision is supported by substantial evidence on the record, and the Commissioner's decision is AFFIRMED.

## Procedural and Factual Background

The complete facts and arguments are presented in the parties' briefs and are repeated here only to the extent necessary.

## Standard of Review

A federal court's review of the Commissioner of Social Security's decision to deny disability benefits is limited to determining whether the Commissioner's findings are supported

by substantial evidence on the record as a whole. *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). Substantial evidence is less than a preponderance, but enough evidence that a reasonable mind would find it sufficient to support the Commissioner's conclusion. *Id.* In making this assessment, the court considers evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *Id.* The court may not reverse the Commissioner's decision as long as substantial evidence in the records supports this decision, even if substantial evidence in the record also supports a different result, or if the court might have decided the case differently were it the initial finder of fact. *Id.*

**Analysis**

Generally a federal court's review of the Commissioner's decision to deny an application for disability insurance benefits or supplemental social security income is restricted to determining whether the Commissioner's decision is consistent with the Social Security Act, the regulations, and applicable case law, and whether the findings of fact are supported by substantial evidence on the record as a whole. In determining whether a claimant is disabled, the Commissioner follows a five-step evaluation process.[1]

Plaintiff Edwin Barker, Jr. alleges he became disabled on December 15, 2003, due to degenerative arthritis, stenosis, fibromyalgia, memory loss, and chronic obstructive pulmonary

---

[1] The five-step process works as follows: First, the Commissioner determines if the applicant is currently engaged in substantial gainful activity. If so, he is not disabled; if not, the inquiry continues. At step two the Commissioner determines if the applicant has a "severe medically determinable physical or mental impairment" or a combination of impairments. If so, and they meet the durational requirement of having lasted or being expected to last for a continuous 12-month period, the inquiry continues; if not, the applicant is considered not disabled. At step three the Commissioner considers whether the impairment is one of specific listing of impairments in Appendix 1 of 20 C.F.R. § 404.1520. If so, the applicant is considered disabled; if not, the inquiry continues. At step four the Commissioner considers if the applicant's residual functional capacity allows the applicant to perform past relevant work. If so, the applicant is not disabled; if not, the inquiry continues. At step five the Commissioner considers whether, in light of the applicant's age, education and work experience, the applicant can perform any other kind of work. 20 C.F.R. § 404.1520(a)(4)(i)-(v) (2009); *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009). Through step four of the analysis the claimant bears the burden of showing that he is disabled. After the analysis reaches step five, the burden shifts to the Commissioner to show that there are other jobs in the economy that the claimant can perform. *King*, 564 F.3d at 979 n.2.

disease ("COPD"). Barker argues (1) the ALJ's decision is not supported by substantial evidence on the record because the ALJ erred in rejecting his allegations of debilitating neck and back pain which led to an inaccurate finding that his residual functional capacity ("RFC") permitted him to do more than he actually could, and consequently the hypothetical posed to the vocational expert did not accurately reflect his impairments; (2) the ALJ failed to develop the medical evidence in the case; (3) the ALJ failed to find that his fibromyalgia and anxiety disorder were severe impairments; and (4) the ALJ failed to make adequate credibility findings. The Court finds no merit to these arguments.

A.     **The ALJ's finding that Plaintiff could lift up to 10 pounds frequently and 20 pounds occasionally is supported by substantial evidence on the record.**

Plaintiff argues the ALJ erred in finding he could lift up to 10 pounds frequently and 20 pounds occasionally, which in turn led to an erroneous finding that he was capable of performing light work that existed in significant number in the national economy. Plaintiff contends the ALJ sorted through the treatment notes of his treating physician, Dr. Theresa Garcia, to find evidence which would negate his allegations of disabling pain and also wrongly rejected the findings of the consultative examiner, Dr. Anson, who found that he had significant limitations.

The ALJ's treatment of Dr. Garcia's opinion is supported by substantial evidence on the record. In March of 2005, Plaintiff reported that a neurologist had looked at his MRI and told him he did not have a problem. Based on the fact that "neurosurgery [was] not impressed with [Plaintiff's] MRI or his presentation," Dr. Garcia believed she did not need to take "further action" with regard to his neck pain other than "perhaps to repeat an MRI." This finding is confirmed by Plaintiff's statements in April of 2005 that neurologists and neurosurgeons had once again "told him that nothing [was] wrong with his back," and that he was feeling decreased

3

pain after undergoing physical therapy. While Dr. Garcia did note some abnormal findings, such as stiffness and limited range of motion, she continued administering conservative treatment. Contrary to Plaintiff's suggestion, the ALJ did not ignore evidence that Dr. Garcia believed Plaintiff suffered back and neck pain. The ALJ imposed significant limitations on Plaintiff's ability to work, recognizing that he should not perform certain postural movements or any "constant rotation of the head or neck, from side to side or up and down." The issue the ALJ needed to determine was whether Plaintiff's neck and back pain prevented him from performing substantial gainful activity, and substantial evidence on the record supports the ALJ's finding that Plaintiff's allegations of total disability were not credible.

Similarly, the ALJ did not err in giving little weight to the consultative examiner's opinion. The ALJ found that Dr. Anson's recommendation that Plaintiff could only sit for a limited time and that he must be allowed to lie down for two hours during an eight-hour workday was not supported by the totality of the evidence. The ALJ found that these limitations were inconsistent with Plaintiff's sporadic medical treatment and demonstrated level of functioning. The ALJ also noted that Dr. Anson had only seen Plaintiff once, and that his opinion was based heavily on Plaintiff's self-reported history and subjective complaints.

Plaintiff also argues that Dr. Anson's opinion should have been given more weight because his findings were consistent with Dr. Garcia's. While Dr. Anson's examination was consistent with some of Dr. Garcia's findings, it does not support all the recommended limitations, such as the need to recline two hours in an eight-hour workday. Neither Dr. Garcia nor any other treating physician ever recommended such a restriction. While the postural limitations are supported by the record, the other restrictions proposed by Dr. Anson are not; thus substantial evidence supports the ALJ's decision to give Dr. Anson's opinion little weight.

4

**B. The ALJ fairly developed the record.**

Plaintiff argues the ALJ failed to fairly develop the record because a note memorializing Plaintiff's October 20, 2008 meeting with Dr. Ram Chandra, D.O., and Dr. Jeffrey Sattler, D.O., is missing from the record. While the ALJ has a duty to develop the record fully and fairly, a federal court may not reverse or remand the ALJ's decision because some medical records were not obtained unless the plaintiff can demonstrate unfairness or prejudice. *Onstad v. Shalala*, 999 F.2d 1232, 1234 (8th Cir. 1993). The Commissioner concedes that there is no documentation of this appointment in the record but points out that the ALJ noted that "every reasonable effort had been made to develop the record and complete [Plaintiff's] medical history to insure that his interests [were] properly considered." The Commissioner also notes that the ALJ stated that the existing record was "adequate to determine whether [Plaintiff was] disabled," and the ALJ ordered a consultative examination to complete the record. The record evidences that the ALJ was concerned about fairly developing the record, and there is no indication that the missing record was of such significance that its absence prejudiced Plaintiff or was otherwise unfair. Consequently, the Court holds the ALJ fairly developed the record.

**C. The ALJ did not err in determining that Plaintiff's anxiety and fibromyalgia were not severe, either alone or in combination.**

The ALJ found that Plaintiff had severe COPD and degenerative disc disease of the cervical and lumbar spines and considered whether Plaintiff's anxiety and fibromyalgia were severe, both alone and in combination, but found they were not. Plaintiff argues the ALJ erred by failing to find that his anxiety and fibromyalgia were severe impairments, alone and in combination.

A severe impairment is one which alone, or in combination with other physical or other mental impairments, imposes more than minimal restrictions in the ability to perform basic work activities, such as walking, standing, handling, using judgment, or understanding, carrying out, and remembering simple instructions. 20 C.F.R. §§ 404.1520(c), 404.1521. An impairment is non-severe when it "does not significantly limit" a person's "physical or mental ability to do basic work activities," which means it has "no more than a minimal effect" on a person's ability to work even if one considered that person's age, education, or work experience. 20 C.F.R. §§ 404.1521(a), 416.921(a). The claimant bears the burden of proving that his impairment or combination of impairments is severe. *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). It is not particularly difficult to meet this standard, but the standard is not "toothless." *Id.* at 708.

The record supports the ALJ's determination that Plaintiff's anxiety was not a severe impairment. The record does not document any mental health symptoms until over one year after the alleged onset date, and he never sought treatment from a mental health professional. *Williams v. Sullivan*, 960 F.2d 86, 89 (8th Cir. 1992) (noting a lack of mental health treatment was relevant in finding the claimant's alleged anxiety was non-severe). There is no evidence in the record that Plaintiff's anxiety significantly limited his ability to perform basic work activities for twelve months or longer. In addition, Plaintiff's anxiety "significantly decreased" after he was placed on medication and did not require specialized intervention.

Likewise, the ALJ did not err in finding that Plaintiff's fibromyalgia was not severe. The court may not reverse the Commissioner's decision as long as substantial evidence in the record supports this decision, even if substantial evidence in the record also supports a different result. *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). Here there is substantial evidence in the record supporting the ALJ's decision. Although the consultative examiner diagnosed Plaintiff

with fibromyalgia, the record is devoid of consistent documentation of, or treatment for, fibromyalgia. Plaintiff's treatment focused on his back and neck, he never received treatment from a rheumatologist or specialist in fibromyalgia, and Plaintiff's treating physician never diagnosed Plaintiff with fibromyalgia. Hence the Court cannot say the ALJ erred.

Finally, Plaintiff argues that the ALJ did not consider the effects of Plaintiff's fibromyalgia and anxiety in combination with his back and neck problems and COPD. Although the ALJ wrote that "claimant's anxiety and history of fibromyalgia have been considered in the combination of impairments, but are found to be non-severe impairments," it is unclear whether the combination she was referring to was his combination of fibromyalgia and anxiety, or his fibromyalgia and anxiety in combination with his back and neck problems and COPD. That said, the Eighth Circuit has held that an ALJ has sufficiently considered impairments in combination when she separately discusses each impairment, considers the plaintiff's complaints of pain and daily activities, and makes a finding that the claimant's impairments did not prevent her from performing her past relevant work. *Browning v. Sullivan*, 958 F.2d 817, 821 (8th Cir. 1992). Consequently, there is no error here.

**D.    The ALJ did not err in evaluating Plaintiff's credibility.**

The ALJ found that Plaintiff's allegations of disability were not credible or supported by the totality of the evidence. Plaintiff argues the ALJ improperly discredited his testimony concerning his work history and activities of daily living. He contends his explanation for his inability to keep jobs and earn money is corroborated by medical evidence in the record. He argues the ALJ's findings concerning his daily activities and motivation to work ignores the totality of his testimony, is not supported by any evidence, and is simply untrue.

As a threshold matter, questions concerning a Plaintiff's testimony are "primarily for the ALJ to decide, not the courts." *Baldwin v. Barnhart*, 349 F.3d 549, 558 (8th Cir. 2003). In analyzing a claimant's subjective complaints of pain, the ALJ must consider the entire record, including the medical records, statements from the plaintiff and third-parties, and the so-called *Polaski* factors: (1) the claimant's daily activities, (2) the duration, frequency, and intensity of pain, (3) dosage, effectiveness, and side effects of medication, (4) precipitating and aggravating factors, and (5) functional restrictions. 20 C.F.R. §§ 404.1529, 416.929; *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). When the ALJ explicitly finds that the plaintiff's testimony is not credible and gives good reasons for this finding, courts should defer to the ALJ's finding. *Casey v. Astrue*, 503 F.3d 687, 696 (8th Cir. 2007).

Substantial evidence on the record supports the ALJ's finding here. This evidence includes the following: Plaintiff's treating physicians constantly recommended conservative treatment during the relevant time period; Plaintiff did not consistently participate in therapy (in fact, there is a ten month gap in his treatment); Plaintiff responded to conservative treatment, reporting decreased pain after undergoing physical therapy; a neurosurgeon reviewed Plaintiff's MRI and told him he did not have a problem; one evaluation suggests Plaintiff had the ability to participate in exercise programs; and Plaintiff's chiropractor observed he typically had a normal gait. While it is undisputed that Plaintiff suffered from some back and neck pain, the question is whether Plaintiff's allegations were credible to the extent that the pain prevented him from performing substantial gainful activity. The medical evidence in the record supports the ALJ's finding that these allegations were not credible.

The ALJ also properly relied on Plaintiff's history of low earnings and activities of daily living in assessing his credibility. Low earnings may signify a lack of motivation to work, and

an ALJ can consider low earnings as a factor in the credibility analysis. *See Comstock v. Chater*, 91 F.3d 1143, 1147 (8th Cir. 1996). Here, the ALJ did not err in observing that Plaintiff's low earnings detracted from his credibility. Although Plaintiff argues he had low earnings because of his back pain that began after his 1991 motorcycle accident, Plaintiff's earnings were minimal or non-existent in the years before. Likewise, Plaintiff's daily activities undermined his credibility. Although he testified his daily activities were extremely limited, he also reported he was the primary caregiver for his three year-old child during the day, an activity which is inconsistent with his allegations of disabling pain. *See Brown v. Barnhart*, 390 F.3d 535, 541 (8th Cir. 2004). Because the ALJ provided sound reasons for doubting Plaintiff's credibility, and the record supports this decision, the Court must affirm the ALJ's credibility determination. *Travis v. Astrue*, 477 F.3d 1037, 1042 (8th Cir. 2007) (observing "[t]his court will not substitute its opinion for the ALJ's, who is in a better position to gauge credibility and resolve conflicts in evidence.")

## Conclusion

After careful examination of the record as a whole, the Court finds the Commissioner's determination is supported by substantial evidence on the record, and the Commissioner's decision is AFFIRMED.

**IT IS SO ORDERED.**

Date:  September 8, 2011                     /s/ Greg Kays
　　　　　　　　　　　　　　　　　　　　　　　GREG KAYS, JUDGE
　　　　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT COURT